# United States District Court
# For The District of Massachussets

No._____

_____

**Raul P. Gonsalves,**
Petitioner,

v.    **05 - 1 0 6 1**

**Michael Thompson**
**(Superintendent MCI Shirley Medium)**

&

**Thomas Reilly**
**(Attorney General of Mass.)**
**Respondents.**

_____

**PETITIONER'S MEMORANDUM OF LAW**
**IN SUPPORT OF PETITION FOR WRIT OF**
**HABEAS CORPUS, PURSUANT TO**
**28 U.S.C. § 2254**

_____

**Raul P. Gonsalves, Pro se**

**W68842**
**P.O. Box 1218**
**Shirley, MA 01464**

## Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . i-iv

Const.Amend. & Statutes. . . . . . . . . . . . . . iv

Introduction. . . . . . . . . . . . . . . . . . . . 1

Statement of Case. . . . . . . . . . . . . . . . . . 1

Facts. . . . . . . . . . . . . . . . . . . . . . . .3

Argument . . . . . . . . . . . . . . . . . . . . . 10

    A. The commonwealth failed to preserve
evidence for defense inspection in
violation of the Due Process Clause of
the Fourteenth Amendment of the United
States Constitution. . . . . . . . . . . . . . . .11

    B. Inneffective Assistance of Counsels

    1. Trial Counsel's Representation fell
below an objective Reasonable Standard. . . . . 15

    2. Defense Counsel;s failure to object
to an improper argument by the prosec-
utor and his failure to argue a criti-
cal element of the defense violated
the petitioner's right to the effective
assistance of counsel. . . . . . . . . . . . . .25

    3. Appeals Counsel incorrectly argued
that a 4-wheel off-road vehicle is
similar to a motorized bicycle leading
the appeals Court to the wrong
conclusion and also failed to litigate
a viable claim of illegal search and
seizure. . . . . . . . . . . . . . . . . . . . .29

    C. The statute as applied by the State
Court is vague because it fails to
establish what a motor vehicle is and
it allows the police and prosecutor to
proceed with selective law enforcement
in violation of the Fourteenth Amend-
ment of the United States Constitution. . . . . 30

Conclusion. . . . . . . . . . . . . . . . . . . . .39

Added Prayer For Appropriate relief. . . . . . . . 40

## Table of Authorities

Arizona v. Hicks, 480 U.S. 321,
324-325 (1987). . . . . . . . . . . . . . . . . . .23,.24

Arizona v. Youngblood, 488 U.S. 51,
58 (1968). . . . . . . . . . . . . . . . . . . . . . 12

Bell v. United States,349 U.S. 81,
83 (1955). . . . . . . . . . . . . . . . . . . . . . 37

Bouie v. City of Columbia, 378 U.S. 347,
362-363 (1964). . . . . . . . . . . . . .31, 33, 35, 36

Boyd v. United States, 116 U.S. 616,
630 (1886). . . . . . . . . . . . . . . . . . . . .19

Breacht v. Abrahamson, 507 U.S. 619,
623 (1993). . . . . . . . . . . . . . . . . . .38, 40

Brady v. Maryland, 373 U.S. 83
(1963). . . . . . . . . . . . . . . . . . . . . . .11

Byars v. United States, 273 U.S. 28,
29 (1927). . . . . . . . . . . . . . . . . . . . . 24

California v. Ciraolo , 476 U.S. 207,
212-213 (1986). . . . . . . . . . . . . . . . . . .19

California v. Trombetta, 467 U.S. 479,
486 (1984). . . . . . . . . . . . . . . . . . .11, 15

Carafas v. LeVallee, 391 U.S. 234,
239-240 (1968). . . . . . . . . . . . . . . . . . .37

Commonwealth v. Gonsalves, 56 Mass.App.Ct.
506 (2002). . . . . . . . . . . . . .25, 27, 29, 31, 36

Commonwealth v. Hurd, 51 Mass.App.Ct.
12, 15 (2001). . . . . . . . . . . . . . . . . . . 20

Commonwealth v. Pena, 31 Mass.App.Ct.
201, 204 (1991). . . . . . . . . . . . . . . . . . 19

Commonwealth v. Pietrass, 392 Mass. 892,
897 (1984). . . . . . . . . . . . . . . . . . . . .18

Commonwealth v. Saferian, 366 Mass. 89,
96 (1974). . . . . . . . . . . . . . . . . . . . . 16

Commonwealth v. Straw, 422 Mass. 756,
759 (1996). . . . . . . . . . . . . . . . . . . . .17

Connally v. General Const. Co., 269 U.S.
385, 391 (1926). . . . . . . . . . . . . . . . . 30

Coolidge v. New Hampshire, 403 U.S.
443, 478 (1971). . . . . . . . . . . . . . . 18, 22

Fiswick v. United States, 329 U.S.
211, 221-223 (1946). . . . . . . . . . . . . . . 41

Howes v. Hitchcock, 66 F.Supp.2d 203,
205 (1999). . . . . . . . . . . . . . . . . . .22

Katz v. United States, 389 U.S. 347,
356-357 (1967). . . . . . . . . . . . . . . .17, 22

Kimmelman v. Morrison, 477 U.S. 365,
382-383 (1986). . . . . . . . . . . . . .16, 25, 30

Kirk v. Louisiana, 536 U.S. 635,
638 (2002). . . . . . . . . . . . . . . . . . .18

Kolender v. Lawson, 461 U.S. 352,
358 (1983). . . . . . . . . . . . . . . . . . .33

Lanzetta v. New Jersey, 306 U.S. 451,
453 (1939). . . . . . . . . . . . . . . . . . .34

Lisenba v. California, 314 U.S. 219,
236 (1941). . . . . . . . . . . . . . . . .11, 37

Lockhart v. Fretwell, 506 U.S. 364,
369 (1993). . . . . . . . . . . . . . . . . . .25

Nackey v. United States, 401 U.S. 667,
692-694 (1971). . . . . . . . . . . . . . . . .40

Michigan v. Clifford, 464 U.S. 287,
295 (1984). . . . . . . . . . . . . . . . . . .23

Minnesota v. Carter, 525 U.S. 83,
90 (1998). . . . . . . . . . . . . . . . . . . 20

Minnesota v. Olson, 495 U.S. 91,
98 (1990). . . . . . . . . . . . . . . . . . . 20

Oliver v. United States, 466 U.S. 170,
180 (1984). . . . . . . . . . . . . . . . .18, 19

Owens v. U.S., 387 F.3d 607, 610
(7th Cir. 2004). . . . . . . . . . . . . . . . 28

Pew v. Scopino, 904 F.Supp. 18,
24 (D.Me. 1995). . . . . . . . . . . . . . . 18

Pierce v. United States, 314 U.S. 306,
311 (1941). . . . . . . . . . . . . . . . . . . . . . .36

Rakas v. Illinois, 439 U.S. 128,
142 (1978). . . . . . . . . . . . . . . . . . . . . . .20

Rewis v. United States, 401 U.S. 808.
812 (1971). . . . . . . . . . . . . . . . . . . . . . .37

Smith v. Goguen, 415 U.S. 566,
574 (1974). . . . . . . . . . . . . . . . . . . . .32, 33

Stanley v. Georgia, 394 U.S. 557,
570-572 (1969). . . . . . . . . . . . . . . . . . . . .23

Stone v. Powell, 428 U.S. 465
(1976). . . . . . . . . . . . . . . . . . . . . . . . .40

Strickland v. Washington, 466 U.S. 668,
688 (1984). . . . . . . . . . . . . .16, 25, 28, 30, 40

Teague v. Lane, 489 U.S. 288,
311-314 (1989). . . . . . . . . . . . . . . . . . . . .40

U.S. v. Carter, 360 F.3d 1235,
1241 (10th Cir. 2004). . . . . . . . . . . . . . . . . 19

U.S. v. Chadwick, 433 U.S. 1,
8-10 (1977). . . . . . . . . . . . . . . . . . . . 17, 22

U.S. v. DiRe, 332 U.S. 581,
595 (1948). . . . . . . . . . . . . . . . . . . . . . .24

U.S. v. Gaudin, 515 U.S. 506,
511 (1995). . . . . . . . . . . . . . . . . . . . . . .28

U.S. v. Harriss, 347 U.S. 612,
617 (1954). . . . . . . . . . . . . . . . . . . . . . .33

U.S. v. Hussein, 351 F.3d 11,
13-14 (1st Cir. 2003). . . . . . . . . . . . . . . . . 33

U.S. v. Jeffers, 342 U.S. 48 (1951). . . . . . . . . . 22

U.S. v. Place, 462 U.S. 696, 701 (1983). . . . . . . . 17

U.S. v. Pollard, 215 F.3d 643, 647
(6th Cir. 2000). . . . . . . . . . . . . . . . . . . . 21

U.S. v. Rhiger, 315 F.3d 1283, 1287
(10th Cir. 2003). . . . . . . . . . . . . . . . . . . .21

U.S. v. Sangineto-Miranda, 859 F.2d 1501,
1510 (6th Cir. 1998). . . . . . . . . . . . . . . . . .21

U.S. v. Shy Health, 259 F.3d 522, 533
(6th Cir. 2001). . . . . . . . . . . . . . . . . . . 20

U.S. v. Valenzuela-Bernal, 458 U.S. 858,
867 (1982). . . . . . . . . . . . . . . . . . . . . .14

U.S. v. White, 401 U.S. 745, 752 (1971). . . . . . . 22

Vale v. Louisiana, 399 U.S. 30,
34-35 (1970). . . . . . . . . . . . . . . . . . . . .18

Walters v. Metropolitan Ed. Enterprises, Inc.,
519 U.S. 202 (1997). . . . . . . . . . . . . . . . . 31

Welsh v. Wisconsin, 466 U.S. 740,
753 (1984). . . . . . . . . . . . . . . . . . . . . .22

Williams v. Taylor, 529 U.S. 362,
374-375 (2000). . . . . . . . . . . . . . . . . . . .40

### Statutes & Const. Amend.

Massachusetts General Laws
    M.G.L.c. 90, § 1, . . . . . . . . . . . . . . 31, 35

    M.G.L.c. 211, § 3, . . . . . . . . . . . . . . . . 3

    M.G.L.c. 266, § 28, . . . 1, 3, 30, 32, 34, 36, 38

    M.G.L.c. 266, § 60, . . . . . . . . 32, 36, 38, 39

United States Codes

    28 U.S.C. § 2254. . . . . . . . . . . . . . . . . 10

    49 U.S.C. § 30102(a)(6). . . . . . . . . . . 31, 35

Constitutional Amendments

    Fourth Amendment. . . . . . . . 16, 17, 19, 20, 21

    Six Amendment. . . . . . . . . . . .10, 25, 28, 30

    Fourteenth Amendment . . . . . . . . . . 1, 10, 11

## I. INTRODUCTION

Petitioner, Raul P. Gonsalves, asserts three principal arguments in support of his Petition for a Writ of Habeas Corpus. First, Petitioner maintains that he was denied Due Process, that the Commonwealth failed to preserve exculpatory evidence for defense inspection, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Second, Petitioner maintains that he was denied Effective Assistance of counsel by both his trial and appeals counsel's. That both counsel's failed to spot and develop a record as to an illegal search and seizure. Therefore, failing to litigate a viable claim of illegal search and seizure. Appeals counsel also incorrectly argued the statute issue in the petitioner's direct appeal. Third, the statute as applied by the State Court is vague as applied and overbroad because it fails to establish what a "motor vehicle" is and the term motor vehicle differs in it's application. The Petitioner maintains that he stands convicted under the wrong statute, that an off-road vehicle is not a "motor vehicle" under the statute.

## II. STATEMENT OF THE CASE

On May 11, 1999, the Petitioner was indicted by the Barnstable County Grand Jury for receiving a stolen motor vehicle, a violation of M.G.L.c. 266, § 28. (Barnstable County Superior Court Crim. No.1999-48336).

1

The Petitioner was released on personal recognizance. (R.A. 2).

The case went to trial before Judge O'Neill and a jury on December 4th and 5th of 2000.[1] (R.A. 4; Tr.I & Tr.II). On December 5th the Petitioner was found guilty as charged.(R.A. 4; Tr.II 66). The Judge sentenced the Petitioner to serve 4 to 5 years in Massachusetts State prison. (R.A. 3, 4; Tr.II 72). A notice of appeal was filed on December 5th, 2000. (R.A. 4, 16).

The appeal was docketed in the Mass.App.Ct. on March 27, 2001, and argued on June 10, 2002. On Nov. 21, 2002, the court issued a full published decision wich affirmed the judgement of the trial Court.(R.A. 25-29). On December 11th, of 2002, an application for further review was filed.(R.A. 23). On January 7th of 2003, the FAR application was denied.(R.A. 24).

The Petitioner then filed a pro se motion for new trial in the Barnstable Superior Court wich was docketed in the Court on June 9th 2003 and on July 7th 2003, (Connon J.) denied the new trial motion. (R.A. 31-47).

---

[1]  Referance to the record appendix are designated "R.A." and referance to the Trial Transcripts are designated "Tr.I and Tr.II"

The Petitioner filed notice of appeal which was docketed in the superior Court Department on July 14th, 2003.(R.A. 6 ). On July 23, 2003, the appeal was enterd in the Mass.App.Ct. under Commonwealth v. Gonsalves,No. 2003-P-981. On November 5, 2004, the Mass.App.Ct. affirmed the lower court's decision denying the New Trial Motion.

The Petitioner applied for further Appellate review in the Supreme Judicial Court, docketed on November 15, 2004, No. FAR-14483.  On March 2nd, 2005, the FAR application was denied by the SJC.(R.A. 60).

On August 11, 2003, the Petitioner filed a petition in the Massachusetts Supreme Judicial Court for Suffolk County, pursuant to M.G.L.c. 211, § 3, No.SJ-2003-0378. Challenging the Mass.App.Ct.'s decision that an off-road vehicle is a "motor vehicle" under the statute charged, M.G.L.c. 266, § 28. On February 24, 2003, the petition was denied (Cordy J.). Notice of appeal was filed.(R.A. 61-63 ). On March 5, 2004, the case was enterd in the Supreme Judicial Court for the Commonwealth (Full Bench). No.SJC-09217. (R.A. 64 ). On July 22, 2004, the appeal of the petition was denied.(R.A. 65 ). See, Gonsalves v. Commonwealth, 442 Mass. 1016 (2004).

### III. FACTS

While on routine patrol at 9:07 p.m. on December 27, 1998, Falmouth police officer Charles Marken spotted the taillight of what appeared to be an all-terrain vehicle traveling on Rte 28.(Tr.I 90,94,96).

3

He followed it as it turned off the highway onto
Shorewood Drive and then down a dead end side street
Avalon Drive, where he lost sight of the vehicle. (Tr.I
97).

Marken alighted from his cruiser and walked toward
the driveway of the house where he thought the vehicle
might have gone. (Tr.I 98). There he observed tire
tracks that he believed to be consistent with an ATV.
(Tr.I 100). At the same time, he saw a truck approach
the house.(Tr.I 99). He knew the driver as the
defendant's brother, Carlos, and recognized the truck
as one owned by the defendant.(Tr.I 100).

Marken followed the tracks towards the back of the
yard and saw a man wearing a ski mask emerge from the
darkness.(Tr.I 101). Despite the mask, Marken claimed
that he could identify this man, from his eyes and his
speech, as the defendant.(Tr.I 101-102).[2] Marken could
not say with moral certainty, however, that the masked
man had also been riding the 4-wheeler.(Tr.I 116, 134).
When the man claimed ignorance about an ATV, Marken
went into the backyard and saw the vehicle.(Tr.I 102-
103).

---

[2] Marken claimed to have talked to the defendant
on at least six different occasions but when pressed,
could only recall one particular instance when he saw
the defendant working as a parking attendant at the
Barnstable County Fairgrounds.(Tr.I 117-118).

4

The officer then heard someone call his name from behind and saw the masked man and Carlos approach with a key to the lock on the ATV.(Tr.I 105-107).Marken told the man to back off but he managed to remove the lock.[3] (Tr.I 105-107). Marken then called for assistance and both men went to the front of the house.(Tr.I 107). The truck then left the area.(Tr.I 108).

Marken checked the vehicle identification number on the ATV and noticed that the last two numbers appeared to have been alterd.(Tr.I 108). When he returned to the station, the shift supervisor Sergeant Thomas Mountford, using his best guess for the last two numbers, enterd the VIN number of the ATV on the NCIC computer and found that it matched a vehicle stolen from New York.(Tr.I 61, 68-69, 140, 144-145).

The owner of Yamaha Country in Glens Falls, New York arrived on Saturday morning October 3, 1998, to discover that someone had apparently enterd overnight through his office window.(Tr.I 53, 61). A 4-wheeler (Also known as an ATV) and a dirtbike were missing from the showroom.(Tr.I 61). The 4-wheeler had the VIN number JY43GGW04XA154738 and an engine number 3GG-154098.(Tr.I 69-70). The certificate of origin for

---

[3] Marken testified to the grand jury that, Raul Gonsalves "attempted to remove the lock". At trial when he was asked if his earlier testimony was incorrect, he said "yes". (Tr.I 113, 114).

the ATV establishes that it was not manufactured for use on public roadways and such use is prohibited by law.(R.A. 18 ).

The police called the Barnstable County Sheriff's office criminal bureau to take pictures of the vehicle. Deputy Sheriff Andrew Neil McGonagle took several pictures of the vehicle and the respective VIN and the engine numbers.(Tr.I 159-160). The numbers matched those from the stolen 4-wheeler from Yamaha Country. (Tr.I 159). He also dusted parts of the 4-wheeler for fingerprints but was not able to recover any.(Tr.I 160-162).

There was some discrepancy as to when the pictures had been taken. McGonagle at first stated that he had been called to the station at 3:48 p.m. on December 27, 1998, but then corrected himself and said that it was the following afternoon.(Tr.I 157-158). The printed notation on the pictures listed the date of December 27, 1998.(Tr.I 164). McGonagle claimed that this date and time was when his office received the call from the Falmouth police.(Tr.I 165, 167-168). Thus, according to his account, the sheriff's office was contacted to take pictures of the vehicle in the afternoon of December 27 , 1998, approximately five hours before the alleged encounter between officer Marken and the Gonsalves brothers.(Tr.I 94, 165, 168).

The owner of the house in wich the 4-wheeler was found was Nelson Lima, a cousin of the Gonsalves' brothers.(Tr.I 111). He told Marken at the scene that he had been asleep and knew nothing about the vehicle. (Tr.I 111-112). Lima and Carlos were charged with possession of the stolen 4-wheeler but those charges were later dropped.(Tr.I 153-154). The day after seizing the vehicle, Marken asked Carlos who the masked man had been.(Tr.I 127). Marken knew one of the Gonsalves brothers lived at the Carleton Circle Motel, but thought it was Carlos.(Tr.I 126).

At some time after the pictures had been taken, officer Marken authorized the release of the 4-wheeler to a salvage company.(Tr.I 80-81; 128). Marken never consulted with the District Attorney's Office before releasing the 4-wheeler.(Tr.I 129).[4] He was later contacted by an investigator for the defense who was seeking an opportunity to view the vehicle.(Tr.I 130-131).[5]

---

[4]  Sergeant Mountford claimed it was police policy to log in evidence seized and to sign it out when it is released.(Tr.I 149-152). He had no knowledge who had signed out this vehicle or when it was released. (Tr.I 151-152). The sheriff department's policy was not to release evidence until receiving proper authority.(Tr.I 166).

[5]  The defendant moved to have the charges dismissed due to the Commonwealth's loss of evidence and the failure to retain the vehicle for defense inspection. The judge denied the motion on the ground that the pictures showed the numbers on the vehicle.(R.A. 3).

The defendant moved for a required finding of not guilty at the close of the Commonwealth's case.(Tr.I 169-177). The trial judge expressed some reservations about the sufficiency of the evidence, particularly concerning the defendant's knowledge that the vehicle was stolen, but ultimately denied the motion.(Tr.I 177).

Fred Rivers the defendant's investigator, had been a Barnstable police detective for 28 years before starting his own investigation business.(Tr.I 178). It was police policy to hold evidence until a case was disposed.(Tr.I 179). Although there was some ocassions when items may be photographed and returned to owners before resolution of the case, the police would first confer with the district attorney.(Tr.I 185-186).

When he was sent in this case to view the 4-wheel vehicle, the Falmouth police station captain could not find any referance to it in the department's computer. (Tr.I 180-181). Officer Marken later told Rivers that it had been returned to the owner but could not say when that had occured.(Tr.I 182).

Carlos Gonsalves also testified for the defense. At about 8:30 p.m. on the evening of December 27, 1998, he borrowed the keys for the truck from his brother and left the defendant at the Carleton Circle Motel.(Tr.I 189-190). At the time, he was working for his cousin Nelson Lima and drove to Lima's house to discuss the next days schedule.(Tr.I 191).

8

When he arrived, he saw the parked police cruiser. (Tr.I 192). Officer Marken approached and asked if he had seen an ATV.(Tr.I 193). Carlos responded that he had not.(Tr.I 193-194). Marken proceeded into Lima's yard, wich contained a number of tire tracks, and Carlos Knocked on Lima's door.(Tr.I 194-195).[6]

Marken then came running from the yard and told Carlos he was under arrest.(Tr.I 197). When Carlos tried to discover what Marken was talking about, Marken shrugged and turned back to the back yard.(Tr.I 197). Carlos got back into the truck and left.(Tr.I 197). The defendant was still at the motel when Carlos returned.(Tr.I 201-202).

Carlos never saw any masked man nor did anyone attempt to remove a lock from an ATV.(Tr.I 197, 210, 213). He had seen plenty of ATV's there in the past. (Tr.I 211). Lima owned three of them.(Tr.I 213).

Carlos later turned himself in and was questioned at the station.(Tr.I 199, 205-206). He told the police from the beginning that the defendant was not at the scene.(Tr.I 209).

At some time after this date , Carlos was riding his motorcycle when Marken came up to him and asked if he was Carlos or Raul.(Tr.I 204).

---

[6] Marken never attempted to get consent to search the premises nor did he have a warrant to do so.

The Petitioner renewed his required finding motion at the conclusion of all the testimony and the judge denied it.(Tr.I 216).

## IV ARGUMENT

Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution a person is entitled to access to exculpatory evidence. The Commonwealth's failure to preserve evidence for defense inspection constituted a Due Process violation. Second, under the Sixth Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights, Petitioner was entitled to the Effective Assistance of Counsel, both at trial and on appeal. Both Counsels failed to raise a viable claim of illegal search and seizure. Appeals Counsel also incorrectly argued the statute issue in the petitioners direct appeal. Third, the State Court interpretation of the statute makes the statute vague and overbroad as applied, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Thus, pursuant to 28 U.S.C. § 2254, Petitioner's petition for a Writ of Habeas Corpus should be granted, and he should be released from state custody, or this Court should declare that the judgement being attacked is invalid.

**A. The Commonwealth failed to preserve exculpatory evidence for defense inspection in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.**

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment, as interpreted in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), makes the good or bad faith of the State irrelevent when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in California v. Trombeta, 467 U.S. 479, 486, 104 S.Ct. 2528, 2532 (1984), that "whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of diving the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 289 (1941), as imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution. That requiring a defendant to show bad faith

11

on the part of the police both limits the extent of the
police's obligation to preserve evidence to reasonable
bounds and confines it to that class of cases where the
intersets of justice most clearly require it, those cases
in which the police themselves by their conduct indicate
that the evidence could form a basis for exonerating the
defendant. The Court held that, "unless a criminal
defendant can show bad faith on the part of the police,
failure to preserve potentially useful evidence does not
constitue a denial of due process". Arizona v. Youngblood,
488 U.S. 51, 58, 109 S.Ct. 333, 337 (1968).

In the instant case, the officer's actions in
releasing evidence without proper authority from anyone
(Tr.I 129) and failure to log evidence in or out when
it was released (Tr.I 180-181) was not proper police
policy. Sergeant Mountford from the Falmouth Police
Department stated it was police policy to log in property
seized and to sign it out when it was returned to an
owner. (Tr.I 149-151). He had no knowledge who had signed
out the evidence or when it was released. (Tr.I 151-152).
The Deputy Sheriff also testified that there department's
policy was not to release evidence until receiving proper
authority. (Tr.I 166).

The Petitioner was granted a motion to inspect the
evidence. (R.A.10 ). When the Petitioner's investigator
was sent to the police station to inspect the evidence,
the police captain attempted to locate the evidence, but
could not find it. (Tr.I 180). He had no idea where

it was.(Tr.I 181). He had the maintenance man check everywhere in the police station. With negative results.(Tr.I 181-182). The investigator was directed to speak to officer Marken.(Tr.I 181). Officer Marken stated that it had been picked up by a private concern. (Tr.I 182).

It is believed that the officer acted in bad faith when he released evidence without confering with the District Attorney's office, or anyone.

The Petitioner moved to have the charges dismissed because he was prevented from having an opportunity to inspect the vehicle.(R.A. 12-14). The judge denied the motion on the basis that the photograghs taken of the off-road vehicle's identification numbers establish that it was the vehicle stolen from Yamaha Country. (R.A. 12).

In this case, identification of the vehicle as the one which had been previously stolen was not the critical issue. Here, the significant issue was the likelihood that a person would have known of the alteration of the numbers. The photographs did not reveal where the numbers were located on the vehicle, its size in relation to the rest of the vehicle, and whether it was otherwise obscured.

Inspection of the vehicle could have shed light on those areas and on the related issue whether the scratches on the final two numbers were intentionally

and maliciously inflicted. Only a view of the entire vehicle could reveal whether there were other similar scratches on the undercarriage of the vehicle, perhaps the result of some earlier mishap. There was some testimony as to the numbers being on the frame under the vehicle.(Tr.I 159). The undercarriage of those types of vehicles are known to get damaged from rocks and other rough terrain.

The Commonwealth argued in his closing arguments, "There is no damage, accident type damage to this vehicle, this had'nt been in an accident, and just simply the last two numbers of this had been scratched out. That was an intentional scratching out of those numbers."(Tr.II 32-33). To the Contrary, the petitioner was initially charged in the Falmouth District Court with malicious destruction of property (the 4-wheel off-road vehicle; R.A. 75 ), and the Falmouth Police incident report stated that one head lamp was completely smashed out.(R.A. 85). Indication that there was damage to the vehicle.

Under the jurisprudence that has "loosely be[en] called the area of constitutionally garanteed access to evidence," United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440 (1982), the State has the obligation to "deliver[] exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity

14

of our criminal justice system." <u>California v.</u>
<u>Trobetta</u>, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984).

There was no discernable reason why they could
not have retained the vehicle for defense inspection.
The petitioner was deprived of an opportunity to view
the vehicle and take any desired photographs. It was
unfair to permit the prosecutor to proceed where the
only evidence of the petitioner's knowledge was inferr-
ed from two scratched numbers as viewed in photographs
taken by the sheriff's department, which were dated
before the case even happend.(Tr.I 165, 167-168).

Even if a dismissal was considerd to drastic, the
court should have imposed a sanction on the use of the
alterd numbers evidence. While the photographs may have
been sufficient to establish the identity of the
vehicle, it was unfair to use them to establish an
intentional alteration.

### B.   Ineffective Assistance of Counsels.

#### 1.   Trial Counsel's Representation Fell Below an Objective Reasonable Standard.

Trial Counsel failed to litigate a claim of
illegal search and seizure and file a suppression
motion for the evidence that was obtained during a
warrantless search and seizure, without consent or any
circumstances that fall within the narrowly drawn
exceptions of exigency. The failure of counsel to
litigate a viable claim of an illegal search and

15

seizure is a denial of the defendant's Federal and State Constitutional right to the effective assistance of counsel. Kimmelman v. Morrison, 477 U.S. 365, 382-383, 106 S.Ct. 2574, 2586-2587 (1986). Commonwealth v. Pena, 31 Mass.App.Ct. 201, 204, 575 N.E.2d 774, 777 (1991). In the present case the only basis for the petitioner's conviction was a 4-wheel off-road vehicle which the commonwealth claims was in his possession. Based on the facts of the case and the evidence that was introduced at trial, it is believed that the constitutional claim of illegal search and seizure is a viable claim and trial counsel's failure to file a motion to suppress the 4-wheeler, constituted conduct that fell "measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "Below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064 (1984).

Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Kimmelman v. Morrison, 477 U.S. at 375, 106 S.Ct. at

2583. In the present case the only basis for the
Petitioner's conviction in the State Court was a 4-
wheel off-road vehicle that was recoverd on the
private premises without a warrant or consent, or
any circumstances that fall within the narrowly drawn
exceptions of exigency.

On December 27, 1998, Falmouth police officer
Charles Marken searched 22 Avalon Drive in East
Falmouth, Massachusetts in search of a 4-wheeler that
he claimed to have observed operating on a public way,
however, the officer could not say that, that was the
same person he saw operating on the road.(Tr.I 115-116,
134). The officer never attempted to get consent to
search the premises nor did he have a warrant to do so.

The Fourth Amendment proscribes unreasonable
searches and seizures. The United States Supreme Court
has construed the Fourth Amendment to make any
government seizure and search of personal property,
located in an area where the owner has a legitimate
expectation of privacy, per se unreasonable unless
accomplished pursuant to a properly issued warrant.
See United States v. Place, 462 U.S. 696, 701, 103
S.Ct. 2637, 2641 (1983), United States v. Chadwick,
433 U.S. 1, 8-10, 97 S.Ct. 2476 (1977), Katz v. United
States, 389 U.S. 347, 356-357, 88 S.Ct. 507, 514 (1967).

Federal and State case law delineates clear
boundaries for permissable entry by police officers

17

into a home in order to search or arrest. In the absence of a warrant, two conditions must be met in order for a nonconsensual entry to be valid; there must be probable cause and there must be exigent circumstances. See, <u>Kirk v. Louisiana</u>, 536 U.S. 635, 638, 122 S.Ct. 2458, 2459 (2002); <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 478, 91 S.Ct. 2022 (1971); <u>Vale v. Louisiana</u>, 399 U.S. 30, 34-35. 90 S.Ct. 1969 (1970). See also, <u>Commonwealth v. Pietrass</u>, 392 Mass. 892, 897 (1984).

In the present case the area searched was a back-yard that was completely fenced-in, with no public access or view, and although the petitioner did not own the premises, he stored his belongings there because at the time he was living at a motel. The premises was owned by a relative of the Petitioner, a cousin, Nelson Lima, who allowed the Petitioner access at will to the premises and the home. <u>Pew v. Scopino</u>, 904 F.Supp. 18, 24 (D.Me. 1995), Fourth Amendment protection against unreasonable search and seizure encompasses house and it's "curtilage"; "curtilage" is the portion of real estate so intimately tied to house itself that it should be placed under umbrella of Fourth Amendment protection. See also, <u>Oliver v. United States</u>, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742 (1984), "the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the

privacies of life'". <u>Boyd v. United States</u>, 116 U.S.
616, 630, 6 S.Ct. 524, 532 (1886),and therefore has
been considerd part of the home itself for Fourth
Amendment purposes. Thus, courts have extended Fourth
Amendment protection to the curtilage; and they have
defined the curtilage, as did the common law, by
referance to the factors that determine whether an
individual reasonably may expect that an area immediat-
ely adjacent to the home will remain private. <u>Oliver</u>,
466 U.S. at 180; <u>California v. Ciraolo</u>, 476 U.S. 207,
212-213, 106 S.Ct. 1809 (1986) (backyard of private
dwelling is viewed as an extension of the home); <u>U.S.
v. Carter</u>, 360 F.3d 1235, 1241 (10th Cir. 2004) (The
government conceded that the garage should be treated
as a home for purposes of Fourth Amendment analysis,
and does not challenge defendant's assertion that the
backyard should like wise be treated as a home because
it is within the curtilage of the residence).

Massachusetts Courts have also held a fenced-in
backyard to be within the curtilage of the home and
therefore entitled to full protection by both the
Federal and State Constitution from unreasonable
searches and seizures. See, <u>Commonwealth v. Straw</u>, 422
Mass. 756, 759, 665 N.E.2d 80, 83 (Mass. 1996) ( The
defendant intended to protect his property from any
public srutiny because he placed the property in a
closed and locked briefcase and disposed of the brief-

case by throwing it into the fenced-in curtilage of his
family's home, an area enjoying full Fourth Amendment
protection from search by the authorities); Commonwealth
v. Hurd, 51 Mass.App.Ct. 12, 15 (2001) (defendant had
reasonable expectation of privacy in fenced-in backyard).

Although the Petitioner did not own the premises, he
still maintained an expectation of privacy. The Petitioner
and the owner of the premises are cousins, the Petitioner
had a "familial tie to the owner" of the premises which
is a "relationship" that establishes that he maintained
a legitimate expectation of privacy. See, United States
v. Shy Health, 259 F.3d 522, 533 (6th Cir. 2001). Further,
"a person can have a legally sufficient interest in a
place other than his own home so that the Fourth Amendment
protects him from unreasonable government intrusion into
that place". Rakas v. Illinois, 439 U.S. 128,142 (1978).

The Supreme Court in Minnesota v. Olson, 495 U.S. 91,
98 (1990), held "that overnught guest has a legitimate
expectation of privacy in his host's home" that is not
diminished because he does not have "complete dominion
and control over the apartment". The Supreme Court has
further clarified that, when determining whether a
defendant is entitled to protections afforded by Olson,
reviewing courts should consider whether there was a
"previous relationship" with the apartment lessee or if
there is any indicia "of accepptance into the household".
Minnesota v. Carter, 525 U.S. 83, 90 (1998). See also,

United States v. Sangineto-Miranda, 859 F.2d 1501, 1510
(6th Cir. 1998) (finding that the defendant, who had
"unrestricted access. . .was allowed to stay overnight
'as often as he felt'" and a key, established a legitimate
expectation of privacy in the apartment); U.S. v. Pollard,
215 F.3d 643, 647 (6th Cir. 2000) (defendant had legitimate
expectation of privacy in dwelling other than his own home,
and thus, he had standing under Fourth Amendment to
challenge search of the dwelling; defendant had been friends
with lessee for approximately seven years, defendant had
been staying at that dwelling earlier in the week, he
occassionally spent night there and kept some belongings in
closet in living room, he sometimes ate meals with family
during his visits, and was allowed to stay in that home
even if residents were not present); U.S. v. Rhiger, 315
F.3d 1283, 1287 (10th Cir. 2003) (defendant was a "social
guest" at his host's home, and therefore had standing to
object to federal drug agent's search of the house, where
he had known the host for about two weeks, had a regular
presence at the home, stayed overnight at the house on a
few occassions when he was too intoxicated to drive, had
receipts in the house for items he had purchased, and was
comfortable enough to enter unannounced to take a nap).

The Petitioner in the instant case had access at will
to the premises and the home. Further, he stored his
belongings on the premises. Fourth Amendment extends to
person who owns or possesses property and stores it on

21

premises of another to which he has access at will. <u>United States v. Jeffers</u>, 342 U.S. 48 (1951).

The Supreme Court in <u>Katz v. United States</u>, 389 U.S. 347, 353, 88 S.Ct. 507, 512 (1967), held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. See also, <u>United States v. Chadwick</u>, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481 (1977); <u>United States v. White</u>, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126 (1971).

The officer's claim to have observed a 4-wheel off-road vehicle operating on a public way does not justify his actions in searching a private premises without a warrant or consent. The Supreme Court stated in <u>Coolidge v. New Hampshire</u>, 403 U.S. at 468, "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'". Further, traffick violations, or misdemeanors, undermine the showing of exigency that would support warrantless searches or seizures. <u>Howes v. Hitchcock</u>, 66 F.Supp.2d 203, 205, 212 (1999), Certain mitigating factors may undermine the showing of exigent circumstances; for example, where the criminal offense was not sufficiently serious (a traffick violation)". Citing, <u>Welsh v. Wisconsin</u>, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099 (1984).

Besides the fact the police did not have a warrant or consent to search the premises. There was no reason to seize the 4-wheel off-road vehicle because the numbers were not in plain view, they're on the frame under the vehicle.(Tr.I 159). See Arizona v. Hicks, 480 U.S. 321, 324-325, 107 S.Ct. 1149 (1987) (Officers actions in moving stereo equipment in order to locate serial numbers and determine if equipment was stolen, constituted "search" not withstanding that officer was lawfully present within apartment where equipment was located in plain view). See also Stanley v. Georgia, 394 U.S. 557, 570-572, 89 S.Ct. 1243 (1969).

The officers actions in searching the premises was not to apprehend someone who violated the law, but instead, to search for evidence. When he encounterd the person in the driveway, that he claims to be the petitioner, the officer did not attempt to arrest him, he asked where the bike was.(Tr.I 102). When the man claimed ignorance, the officer proceeded to search for the bike (4-wheeler).(Tr.I 102). Michigan v. Clifford, 464 U.S. 287, 295, 104 S.Ct. 641 (1984), "a search to gather evidence of criminal activity not in plain view must be made pursuant to a criminal warrant upon the showing of probable cause". It is believed that the officer's actions were based on a "reasonable suspicion" that the 4-wheeler was a stolen dirtbike that was missing from AAA Towing in Mashpee,

23

Massachusetts on December 20, 1998.(R.A. 81). However, the dirtbike that was missing from the towing company was not a 4-wheeler, it was a dirtbike with two wheels.

In <u>Arizona v. Hicks</u>, 480 U.S. at 326, the Supreme Court held that, "reasonable suspicion"...means something less than probable cause... We now hold that probable cause is required.

Before the search of the premises there was no information from any source regarding the vehicles stolen nature. Therefore, it is believed that the officers actions were not supported by nothing more than "reasonable suspicion". Under the circumstances of the case there are no circumstances that fall within the narrowly drawn exceptions of exigency. Therefore, it is believed that the petitioner's claim is a viable claim and that counsels failure to raise the issue constituted ineffective assistance of counsel.

The fact that a stolen 4-wheeler was recoverd on the premises does not make it lawfull. "A search is not made lawfull by what it turns up". <u>United States v. DiRe</u>, 332 U.S. 581, 595, 68 S.Ct. 222 (1948). See also, <u>Byars v. United States</u>, 273 U.S. 28, 29, 47 S.Ct. 248 (1927), where the United States Supreme Court stated, "A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been tolerated under our

24

constitutional system".

> 2. <u>Defense counsel's failure to object to</u>
> <u>an improper argument by the prosecutor and</u>
> <u>his failure to argue a critical element of</u>
> <u>the defense violated the petitioner's</u>
> <u>right to the Effective Assistance of</u>
> <u>Counsel.</u>

Under the Sixth Amendment to the United States

constitution, a defendant/petitioner is deprived of the

effective assistance of counsel if counsel's actions

were seriuosly deficient . The United States Supreme

Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104

S.Ct. 2052 (1984) identified the two components to any

ineffective-assistance claim: (1) deficient performance

and (2) prejudice. See <u>Lockhart v. Fretwell</u>, 506 U.S.

364, 369 (1993). A criminal defendant alleging prejudice

must show "that counsel's errors  were so serious as to

deprive the defendant of a fair trial, a trial whose

result is reliable". <u>Strickland</u>, 466 U.S. at 687; see

also <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374, 106 S.Ct.

2574, 2582 (1986)("The essence of an ineffective

assistance claim is that counsel's unprofessional errors

so upset the adversarial balance between defense and

prosecution that the trial was renderd unfair and the

verdict renderd suspect").

Trial counsel failed to argue the absence of proof

of the petitioner's knowledge that the off-road vehicle

had been stolen. The trial judge, was so concerned about

counsel's failure to address the issue that he took the

highly unusual step of interrupting the argument to

25

suggest that counsel ought to argue the knowledge issue.
(Tr.II 28). The judge's concern was justified as there
was no logical reason for counsel's decision to ignore
a strong argument for acquittal, an element of the crime
charged.

At best, the commonwealth's evidence establishes
that the petitioner was in the yard of his cousin, where
the off-road vehicle was recoverd. (Although the
petitioner does not agree with the evidence). The only
fact from which the commonwealth seeks to infer
knowledge of the vehicle's purloined character is the
alteration to two of the seventeen numbers and letters
which establish the vehicle's identification. There is
no showing that the petitioner ever saw the numbers.

Counsel was not faced with advancing two controdi-
ctory arguments. He could have simply said that, whoever
the "masked man" may have been, there was no evidence
that he knew that the off-road vehicle was stolen. It
is appropriate and necessary to argue in the alternative.
This was one of those occassions.

Trial counsel also failed to object to the
prosecutor's improper argument. On cross-examination,
the prosecutor asked Carlos (the petitioner's brother)
whether the trial was "the first time we're hearing this
information" concerning the petitioner's whereabouts
during the encounter. Carlos responded, "yes, it's the
first time it's been on trial. I had to".(Tr.I 208).

When the prosecutor explored this further, however,
Carlos clarified that he had told the police this
version of events "from the beginning".(Tr.I 209).
It was clear, therefore, that Carlos did not admit that
he had withheld his evidence from authorities. While it
may have been the first time that the prosecutor was
hearing the account, Carlos had related it to the
police.

There was no other evidence presented to counter
this statement. Carlos had no reason to mention his
brother's whereabouts to Marken at the scene of the
incident since, in his account, there was no
conversation concerning his brother. (Tr.I 196-197).
When he was later charged with possession of the off-
road vehicle, he did talk to the police. The prosecutor
, however, objected to questions designed to elicit
what was said. (Tr.I 206). There simply was no evidence
, or any reasonable inference derived from any source,
that Carlos did anything other than relate this same
account to the police. It was error for the prosecutor
to argue otherwise and ineffective assistance for trial
counsel to let the remark go unchallenged.

Cousel's deficiencies cannot be considerd harmless.
Far from being one involving "overwhelming inculpatory
evidence", Commowealth v. Gonsalves, 56 Mass.App.Ct.
506, 514 (2002), the case was a marginal one which
relied heavily on the influence of knowledge gleaned

27

from the marginal defacement of the numbers on the off-road vehicle. Even the trial judge had doubts about the sufficiency of the evidence of the petitioner's knowledge that the property was stolen. (Tr.I 177). Under the circumstances, counsel's performance was deficient and prejudiced the petitioner.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial". Strickland v. Washington, 466 U.S. at 684, 104 S.Ct. at 2062.

Knowledge that property is stolen has always been an element of the crime of receiving stolen property or receiving stolen motor vehicle. "The constitution gives a criminal defendant the right to demand that the factfinder find him guilty of all the elements of the crime with which he is charged". U.S. v. Gaudin, 515 U.S. 506, 511, 115 S.Ct. 2310, 2314 (1995).

The "prejudice" essential to a violation of the Sixth Amendment right to the effective assistance of counsel is not being convicted though one is innocent, although that is the worst kind; it is being convicted when one would have been acquited, or at least would have had a good shot at acquital, had one been competently represented. Owens v. U.S., 387 F.3d 607, 610 (7th Cir. 2004). The petitioner was denied an advantage the law permitted or required, due to trial counsel's incompetency.

3. Appeals Counsel incorrectly argued that a 4-wheel off-road vehicle is like a motorized bicycle leading the State Court to the wrong conclusion and also failed to raise a claim of illegal search and seizure.

Appeals counsel incorrectly argued that a 4-wheel off-road vehicle is similar to a motorized bicycle. That argument is incorrect because a motorized bicycle (moped) is a vehicle designed to transport people on the travelled part of ways and an off-road vehicle is prohibited by law from travel on public ways and the vehicle in question (a 4-wheeler) is designed for off-road use only.(R.A. 18 ). The appeals counsel incorrect argument led the appeals court to the wrong conclusion, leading them to apply cases involving mopeds and a vehicle that was inoperable. See, Commonwealth v. Gonsalves, 56 Mass.App.Ct. 506, 509-510n.3 (2002); R.A. 25-29    ). Counsel also failed to argue that the statute that the petitioner was charged under, M.G.L.c. 266, § 28, refers to M.G.L.c. 90, § 1, as defining "motor vehicle or trailer".(R.A. 79 ). Chapter 90, § 1, specifically excludes vehicles designed especially for use elsewhere than on the travelled part of ways.(R.A. 80 ). Further, 49 U.S.C. § 30102(a)(6), "Motor Vehicle" means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads , and highways, but does not include a vehicle operated only on a rail line. A 4-wheel off-road vehicle is

29

excluded from both the State and the Federal definition of "motor vehicle", because it is a vehicle that is designed for off-road use <u>only</u>.

Appeals counsel performance was inadequate and prejudicial. Had the appeals counsel adequately argued the matter, the State-Court would have recognized that an off-road vehicle is clearly outside the scope of the statute, and that the petitioner is convicted under the wrong statute. Counsel's actions led the State Court to the wrong conclusion. Appeals counsel incorrect and inadequate argument fell "below an objective standard of reasonableness", <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 104 S.Ct. 2052 (1984).

Appeals counsel also failed to litigate a viable claim of illegal search and seizure. The failure of counsel to litigate a viable claim of an illegal search and seizure is a denial of the defendant's Federal and State Constitutional right to the effective assistance of counsel. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382-383, 106 S.Ct. 2574 (1986).

> **C. The statute as applied by the State-Court is vague because it fails to establish what a motor vehicle is and it allows the police and prosecutor to proceed with selective law enforcement, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.**

The petitioner was charged with being in possess-ion of a stolen "motor vehicle", in violation of M.G.L. c. 266, § 28. The vehicle involved is a 4-wheel off-

road vehicle (a 1999 Yamaha Banshee; R.A. 18). The
statutory definition of "motor vehicle", as defined by
both the State legislature in M.G.L.c. 90, § 1, and by
Congress in 49 U.S.C. § 30102(a)(6), include only
vehicles designed primarily for use on public ways.

The Appeals Court concluded that an off-road
vehicle is a "motor vehicle" under the statute charged
in the petitioner's direct appeal, Commonwealth v.
Gonsalves, 56 Mass.App.Ct. 506, 507-510n.3 (2002).

The State-Court was not justified in departing
from the plain meaning of words, especially in a penal
act, in search of intention which words themselves do
not suggest, and to determine that a case is within
intention of statute, its language must authorize court
to do so. Bouie v. City of Columbia, 378 U.S. 347, 362-
363, 84 S.Ct. 1697, 1707 (1964).

Absent indication to the contrary, words in
statute are assumed to bear their ordinary,
contemparary, common meaning. Walters v. Metropolitan
Ed. Enterprises, Inc., 519 U.S. 202, 207, 117 S.Ct.
660 (1997). The ordinary, contemparary, common meaning
of the term "motor vehicle" has never been known to
encompass off-road vehicles.

The statute as applied or interpreted by the State
Court provides inadequate and insufficient guidelines
for law enforcement officials because it leaves it up
to officials to determine who they will charge under

31

the enhanced criminal penalty for receiving stolen
"motor vehicles". Where they can charge someone under
the receiving statute, M.G.L.c. 266, § 60, which only
carries 5 years, or to charge someone who possesses
a stolen off-road vehicle with a stolen "motor vehicle"
in violation of M.G.L.c. 266, § 28, which carries up to
15 years. The police can charge someone with the
enhanced criminal penalty of c. 266, § 28, for no other
reason than to further punish someone for their own
personal reasons.

Due Process requires that all "be informed as to
what the state commands or forbids", and that "men of
common intelligence" not be forced to guess at the
meaning of the law. Smith v. Goguen, 415 U.S. 566, 574
(1974). A person of common intelligence would assume
that a 4-wheel off-road vehicle is not a "motor vehicle"
because it cannot be registerd or operated as a "motor
vehicle". If a person operates a 4-wheel off-road
vehicle on a public way they will be arrested because
it is not a "motor vehicle", therefore, it is unlawful
to operate such a vehicle on a public way. However, if
it is stolen then it is considerd a "motor vehicle"
and one could get up to 15 years in prison. The
police and prosecutor now have it both ways.

The Supreme Court has said that, "the more
important aspect of the vagueness doctrine 'is not
actuall notice, but the other principal element of the

32

doctrine-the requirement that the legislature establish minimal guidelines to govern law enforcement'. Otherwise, "a criminal statute may permit 'a standard-less sweep that allows policemen, prosecutors, and juries to pursue their personal predilections'". U.S. v. Hussein, 351 F.3d 9, 13-14 (1st Cir. 2003) Kolender v. Lawson, 461 U.S. 352, 358. 103 S.Ct. 1855, 1858 (1983); Smith v. Goguen, 415 U.S. at 574, 94 S.Ct. at 1247-1248.

The statute is precise on its face but has been expanded by judicial construction. An off-road vehicle is clearly outside the scope of the statute, M.G.L.c. 266, § 28, as written. The Fourteenth Amendment is violated when a person is required "to speculate as to the meaning of penal statutes", or to "guess at the statute's meaning and differ as to its application". Bouie v. City of Columbia, 378 U.S. 347, 352 (1964).

In Bouie, 378 U.S. at 350, 88 S.Ct. at 1701, the Supreme Court stated that, The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court. As was said in United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812 (1954), "The Constitutional requirement of definitness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying

33

principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed". Thus we have struck down a state criminal statute under the Due Process Clause where it was not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties". Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127 (1926). We have recognized in such cases that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law", and that "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids". Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619 (1939).

The instant case is similar to Bouie, where the statute on its face, M.G.L.c. 266, § 28, is admirably narrow and precise; the statute applies only to "motor vehicles". The term "motor vehicle" has a generally accepted and well established meaning, which is in direct conflict with the State-Court interpretation. The statutory definition of the term "motor vehicle" does not encompass  off-road vehicles, it

34

clearly excludes such vehicles.(M.G.L.c. 90 § 1; 49 U.S.C. § 30102(a)(6)).

When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, given him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction. If the Fourteenth Amendment is violated when a person is required "to speculate as to the meaning of penal statutes", as in Lanzetta, or to "guess at the statute's meaning and differ as to its application", as in Connally, the violation is that much greater when, because the uncertainty as to the statutes meaning is itself not revealed until the court's decision, a person is not even afforded an opportunity to engage in such speculation before committing the act in question. Bouie v. City of Columbia, 378 U.S. at 352.

An ex post facto has been defined by the United States Supreme Court as one "that makes an action done before the passing of law, and which was innocent when done, criminal; and punishes such action," or "that aggrevates a crime, or makes it greater than it was, when committed". If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the

35

same result by judicial construction. <u>Bouie</u>, 378 U.S. at 353-354, 84 S.Ct. at 1702.

A person who possesses a recreational vehicle, or off-road vehicle which is stolen would assume that their conduct, although unlawfull, would be outside the scope of the enhanced criminal punishment of M.G.L.c. 266, § 28, for possession of stolen motor vehicle. Because up until the decision of the State-Court, in the petitioner's direct appeal (<u>Commonwealth v. Gonsalves</u>, 56 Mass.App.Ct. 506 (2002)), an off-road vehicle was not considerd a motor vehicle. An off-road vehicle is still not considerd a "motor vehicle" in any other context. It cannot be operated or registerd as a "motor vehicle".

The proper statute is M.G.L.c. 266, § 60, **Stolen goods; buying or receiving.** Which only carries up to five years in state prison, compared to M.G.L.c. 266, § 28, which carries up to fifteen years in state prison.

As the United States Supreme Court recognized in <u>Pierce v. United States</u>, 314 U.S. 306, 311, 62 S.Ct. 237, 239 (1941), "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness". <u>Bouie v. City of Columbia</u>, 378 U.S. at 352, 84 S.Ct. at 1702.

36

It is believed that the statute as written is precise. However, if there is any ambiguity in a criminal statutes meaning it should be resolved in favor of defendant. Commonwealth v. Maxim, 429 Mass. 287, 291-292, 708 N.E.2d 639 (1999), Because it is a basic principle of our criminal law that ambiguities and doubts are to be resolved in favor of a defendant. Rewis v. United States, 410 U.S. 808, 812, 91 S.Ct. 1056, 1059 (1971),"ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity". See also Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620 (1955).

The manner in which the State-Court decided the statute issue is contrary to the manner in which a court should resolve any ambiguity in a criminal matter.

The Due Process Clause requires the State-Court conducting criminal trials "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice'". Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280 (1941). Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimension will merit habeas corpus relief only if it had a "substantial and injurious effect or influence in determining the jury's

verdict". <u>Bracht v. Abrahamson</u>, 507 U.S. 619, 623. 113
S.Ct. 1710 (1993).

In the instant case the petitioner being charged
under the wrong statute clearly had an "injurious"
effect. The judge read to the jury a portion of the
statute, M.G.L.c. 266, § 28, which in part states,

Evidence that an identifying number or numbers of
a motor vehicle or trailer or part thereof has been
intentionally and maliciously removed, defaced,
obliterated, or mutilated, shall be prima facie
evidence that the defendant knew or had reason to know
that the motor vehicle, or trailer or part thereof had
been stolen.(Tr.II 61-62).

Under what is believed to be the proper statute,
M.G.L.c. 266, § 60, for receiving stolen goods, no such
instruction would be proper. Unquestionably, the
instruction had an impact on the outcome, since it was
the principal basis of establishing an element of the
crime charged, knowledge that the petitioner knew the
vehicle was stolen. The judge himself had doubts as to
the sufficientcie of the evidence on the knowledge
element.

THE COURT:(Tr.II 5).
Where the commonwealth has the burden of proof,
is it enough to allow you to have the privilege of the
statute, which is rather Draconian in my view, simply
by introducing evidence of the numbers themselves
without more? And you say it is for those reasons?

THE COURT:(Tr.II 6).
Okay. So, now let's take it a step further. Let's
assume you're correct on that. We take it a step
further. Prima Facie in a civil sense means at first-
hand.
If there is no other evidence in the case, that
would compel the finder of fact to arrive at that
conclusion. There is no other evidence in this case.
So, you're saying--and I--I would say the average

38

person has no idea where their V.I.N. number or
anything else is, would never even look at it.
    So that any person who is riding late at night on
one occasion in a vehicle that has those last two
numbers scratched out is automatically guilty of
receiving stolen property if the commonwealth proves,
one, that the property was stolen; and second, that
the person is in it?
    I have a real difficult time with that concept,
and that is the case here. There is no other evidence.
How can that be?

    The Judge's concern was justified. Knowledge that

the vehicle was stolen is an essential element of the

crime charged and the evidence was scanty indeed and

far from inescapable. The petitioner being charged

under the wrong statute clearly had an "injurious"

effect. As the Judge himself stated there was no other

evidence, besides the alterd number evidence. Under

the proper statute, M.G.L.c. 266, § 60, no such

instruction would have been given.

### CONCLUSION

    In 1867, Congress enacted a statute providing that

Federal Courts "shall have power to grant writs of

habeas corpus in all cases where any person may be

restrained of his liberty in violation of the

constitution, or any treaty or law of the United States

. . ." Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385.

Over the years, the federal habeas corpus statute has

been repeatedly amended, but the scope of that

jurisdictional grant remains the same. It is of course,

well settled that the fact that constitutional error

occured in the proceedings that led to the state-court

conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas. See, e.g., <u>Stone v. Powell</u>, 428 U.S. 465, 96 S.Ct. 3037 (1976); <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S.Ct. 1710 (1993). On the other hand, errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the Federal Writ. See, e.g., <u>Teague v. Lane</u>, 489 U.S. 288, 311-314, 109 S.Ct. 1060 (1989) (quoting <u>Mackey v. United States</u>, 401 U.S. 667, 692-694, 91 S.Ct. 1160 (1971). The deprivation of the right to the effective assistance of counsel recognized in <u>Strickland</u> is such error. <u>Strickland</u>, 466 U.S. at 686, 697-698, 104 S.Ct. 2052. Cited at <u>Williams v. Taylor</u>, 529 U.S. 362, 374-375, 120 S.Ct. 1495, 1503-1504 (2000)

Based on the foregoing authorities, the record in this case and the petition itself, Petitioner, Raul P. Gonsalves, respectfully urges this Honorable Court to grant him a writ of habeas corpus.

### ADDED PRAYER FOR "APPROPRIATE RELIEF"

The Petitioner, Raul P. Gonsalves, prays that this honorable court grant appropriate relief. That this matter be resolved even after the Petitioner is no longer in State Custody.

The Petitioner faces collateral consequences due to the conviction that is now being challenged. He will be deported due to the conviction and taken away from

40

his sons, mother, brothers, and all his family and
friends. The Petitioner came to the United states at
the age of three with his family and has remained in
United States since be admitted in June of 1972. He was
admitted as a lawfull permanent resident ("LPR") but
because he never obtained his citizenship, he now will
be deported because of the conviction now being attacked.

Deportation is a drastic measure that will cause
the Petitioner and his family alot of hardship. Due to
the collateral consequences the petitioner faces, it
is believed this matter should remain in the Court for
resolution and not considerd moot upon his release
from state custody. See, Fiswick v. United States, 329
U.S. 211, 221-23, 67 S.Ct. 224 (1946)(finding collateral
consequences when the conviction renderd the petitioner
liable to deportation and denial of naturalization, and
eligible to serve on jury, vote, or hold office). See
also, Carafas v. LeVallee, 391 U.S. 234, 239-240, 88
S.Ct. 1556, 1560 (1968).

Due to the circumstances of the instant case and
the Constitutional issues involved in this matter, the
Petitioner prays that this Honorable Court declare that
the judgement being attacked is invalid and consider
his petition even after his release from state custody
or after he is deported.

41

Respectfully Submitted,

Raul P. Gonsalves , pro se

Raul P. Gonsalves W68842

P.O. Box 1218

Shirley, MA 01464

March 12th, 2005